# Wood *et al. v.* Pittman, Admr.

*Bill in Equity to set aside and annul Deed of Conveyance.*

1. *Public lands; what necessary to pass title thereto.*—Under the laws of Congress, the receiving and receipting for purchase-money of public lands entered by an individual, or issuing a certificate of entry to a purchaser upon entry of and payment for the lands, does not pass to such purchaser or entryman the title of the Government to such lands; but to pass such title it is necessary that there should be executed and issued by the Government a patent thereto.

2. *Same; acceptance of patent by entryman; presumption in reference thereto.*—Whether title to public land passes to one holding a certificate of entry thereof, by the issuance of a patent by the Government, depends upon whether the entryman accepted the patent so issued; and while delivery to the patentee is not essential, acceptance being ordinarily presumed when the patent is properly signed, recorded in the books of the land department and ready for delivery, this presumption is not conclusive, but may be rebutted and over-turned by proof, that although it was to the interest of the person named as

[Wood *et al.* v. Pittman, Admr.]

patentee to accept the grant, he did not, in fact, assent to or accept it; and upon such proof being made, it is thereby shown that the title to the lands described in the patent has not passed from the Government.

3. *Same; same; facts of this case.*—Where it is shown that the holder of the certificate of entry of public lands issued by the United States, made affidavit that he had made a mistake in respect to the land he had intended to enter, and voluntarily surrendered the certificate, whereupon the entry was set aside, the certificate cancelled and the purchase-money refunded to him, and subsequently a patent was inadvertently made out and sent to the local land office, but before there was any acceptance thereof on the part of entryman the mistake was discovered and the patent was recalled and cancelled, there is not shown an acceptance of the patent by the entryman, and the title to the land remains in the Government.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on March 12, 1895, by the administrator of the estate of John W. Hardy, deceased, against the appellants.

It was averred in the bill that on January 31, 1887, the complainant's intestate, John W. Hardy, contracted to purchase from James B. Wood, R. W. Beck and John Purifoy, 40 acres of land, which are specifically described in the complaint; and that said Wood, Beck and Purifoy executed to Hardy on the above named date, a warranty deed purporting to convey said land; that as consideration for said lands, J. W. Hardy executed his notes, amounting to $2,500, to the grantors, and also assigned to them a note made by Ryland Randolph for $12,353.32, payable to the order of said Hardy; that subsequent to the execution of the deed and the making of the notes and the transfer of the Randolph note, it developed that said Wood, Beck and Purifoy had no title to the lands which were contained in their deed, but that said title to the land was in one Isaiah C. Brown, who held the Government patent to said land, which was issued to him in the year 1887.

The prayer of the bill was that the transaction between the complainant's intestate and Wood, Beck and Purifoy be annulled and cancelled, and that the notes executed by the said Hardy to said grantors be cancelled and returned to the complainant; and that the transfer or assignment on the back of the Randolph note be cancelled, and said note be returned to the complainant.

[Wood *et al.* v. Pittman, Admr.]

The defendants, by answer, set up the defense that they were the owners of the legal title to the lands involved in the suit, and that their warranty deed conveyed the title thereto to the complainant's intestate; that at the time of the entry on the land by Isaiah C. Brown, said land was not owned by the Government. Respondents further averred in their answer that one Thomas Horne entered the lands in dispute from the United States Government in October, 1821, and that by said entry he received a legal title from the Government, and was the owner in fee thereof; that while said Horne was the owner of the fee thereof one John Daniels entered upon said land in the year 1835, and held open, notorious and adverse possession thereof until 1844 or 1845 when he conveyed the lands to one Daniel Eastis, who went into open, notorious and adverse possession; that Eastis held possession under said deed until the year 1855 when he conveyed the lands to Thomas Barton; that on November 6, 1869, the lands were sold under the order of the probate court of Jefferson county, as belonging to the estate of said Thomas Barton, and were purchased by Robert P. Noble, to whom the deed was executed under order of the court; that Noble held possession until May 3, 1877, when he conveyed them by warranty deed to Oliver Wylie; that said Wylie held possession under deed until January 31, 1881, when he conveyed the lands to one Thomas Stubbs; that Stubbs conveyed the land on June 26, 1886, to one Spira; that on September 13, 1886, said Spira conveyed the land to the respondent John Purifoy, and Purifoy on January 31, 1887, conveyed an undivided two-thirds interest to the respondents James B. Wood and Robert W. Beck.

The facts relative to the entry of the lands by Thomas Horne, and as to mistakes made in reference thereto by him, are sufficiently set forth in the opinion.

It was further shown that during the year 1887, Isaiah C. Brown received a patent to said lands from the Government.

Upon the submission of the cause on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for and ordered accordingly. This decree is appealed from, and the same is here assigned as error.

[Wood *et al.* v. Pittman, Admr.]

SAM WILL JOHN, for appellants. — 1. Horne's cash entry of the lands involved in this controversy, and the issuance to him of the certificate of entry, invested him with the title thereto. It could have been sold under legal process as his lands, and the purchaser would have acquired such title as to enable him to recover.—*Goodlet v. Smithson*, 5 Port. 247 ; *Cruise v. Riddle*, 21 Ala. 791 ; *Bates v. Herron*, 35 Ala. 117 ; *Case v. Edgeworth*, 87 Ala. 204. The land became instantly subject to taxation as Horne's land, and passed under the operation and control of the State statutes.—*Carroll v. Safford*, 3 How. 461 ; *Witherspoon v. Duncan,* 4 Wall. 218 ; *U. S. v. Ill. Cen. R. R. Co.*, 154 U. S. 236.

2. The land was subject to a sale, was sold to Horne and certificate issued to him therefor. The officers of the land office could not therefore cancel this entry.— *Carroll v. Safford*, 3 How. 460 ; *Witherspoon v. Duncan*, 4 Wall. 218.

3. The patent issued was regularly signed, sealed and recorded of date July 9, 1823 ; was sent to the land office at Tuscaloosa, where it remained till October 26, 1825, when it was returned to Washington, and thereafter mutilated, which appellee contends was a legal reconveyance of this land to the United States, and that, never having been delivered to or accepted by Horne, no title passed from the United States to him. As soon as the patent to Horne was signed, sealed and recorded, it was perfect, and needed no delivery to Horne, nor acceptance by him, to effectually and completely pass to Horne a fee simple title absolute.—*U. S. v. Schurz*, 102 U. S. 397 ; *Bicknell v. Comstock*, 113 U. S. 151 ; *U. S. v. Stone*, 2 Wall. 535 ; *Steel v. Smelting Co.*, 106 U. S. 454.

4. The return of the patent undelivered was not a substitute for a deed of release, or conveyance by Horne. *Washington, &c., v. Ogden*, 1 Black. 458. Nor would the mutual understanding or acquiescence, expressed by parol, pass the title. The destruction or mutilation of Horne's patent did not revest the title in the United States, even though this was the intention of Horne.— *Brady v. Huff*, 75 Ala. 81 ; *Whisenant v. Gordon*, 101 Ala. 259.

5. The appellee's case rests solely on the validity of Brown's patent, dated March 10, 1890. The appellants contend that as all title of the United States to said lands

passed out of it when the land was sold to Horne, and paid for in full, by him, as evidenced by certificate 884, and later by the patent of July 9, 1823, the United States had no right whatever in or to said lands, and its patent to Brown was and is void.—*Polk v. Wendell,* 5 Wheat. 309. "A patent is utterly void and inoperative which is issued for land that had been previously patented to another individual."—*Stoddard v. Chambers,* 2 How. 318 ; *New Orleans v. United States,* 10 Peters 731 ; *Bates v. Herron,* 35 Ala, 123 ; *Smelting Co. v. Kemp,* 104 U. S. 641. The Government had sold this land, and had put the evidence of such sale and grant on the public records, and it could not, thereafter, change this in any way so as to affect the rights of third persons.—*U. S. v. Arrendondo,* 6 Pet. 738 ; *Polk v. Wendell,* 5 Wheaton 309 ; *U. S. v. Minor,* 29 Fed. Rep. 134.

LOMAX PITTMAN, *contra.*—1. The question, whether the title to a portion of the public lands has passed from the United States must depend exclusively upon the laws of the United States and not upon State statute. After it has passed, and not until then, does it become subject to the operation of State laws. Congress has the sole right and power to dispose of the public domain and to enact all laws and needful regulations respecting the sale thereof. A page of authorities could be cited in support of this proposition, if it were deemed necessary. It has been so frequently decided that it is now beyond the pale of legal controversy.—*Irvine v. Marshall,* 20 How. 558 ; *Bagnell v. Broderick,* 13 Pet. 456 ; *Wilcox v. Jackson,* 13 Pet. 498 ; *U. S. v. Gratiot,* 14 Pet. 526.

2. Until the patent issues, the fee remains in the United States and the legal title has not passed. Nothing passes the legal title to public lands but a patent, except where Congress grants lands in words of present grant.— *Wilcox v. Jackson,* 13 Pet. 498 ; *Bagnell v. Broderick,* 13 Pet. 436 ; *Stoddard v. Chambers,* 2 How. 284 ; *Boardman v. Reed,* 6 Pet. 328 ; *Stringer v. Young,* 3 Pet. 320 ; *Brush v. Ware,* 15 Pet. 93.

3. In this case that the acceptance of the patent which was and is an absolute *sine qua non* of the passage of title to the grantee by the government, was not only not done by Horne, either actually or constructively, but that soon after he paid his money, to-wit, on the

13th day of November, 1821, he petitioned to the government not to issue the patent, but to change his entry, as it had been a mistake on his part and that he followed up that application until he did get his money back, to-wit, on the 1st day of August, 1823. Horne did not want a patent for this land, he never had one delivered to him, and he never accepted one, but from the beginning to the end he repudiated this entry, and asked that it be changed. Hence this quarter section of land never did belong to Horne, but still remained the land of the United States.—*Moore v. Robbins,* 96 U. S. 530 ; *Cen. Branch U. P. R. R. Co. v. K. Pac. R. R. Co.,* 2 Copp's Pub. Land Laws, 774 ; *Maguire v. Tyler,* 8 Wall. 650.

McCLELLAN, J.—A State may well provide by statute, as Alabama has provided by section 2782 of the Code of 1886, what shall evidence and constitute title to land as between a purchaser from the United States and third parties ; but it is not within the competency of a State in any case to provide what shall evidence and constitute title as between such purchaser and the United States : that is a matter committed by the federal constitution to the Congress of the United States.—Const. Art. IV, § 3 ; *Irvine v. Marshall,* 20 How. 553 ; *Bagnell v. Broderick,* 13 Pet. 456 ; *U. S. v. Gratiot,* 14 Pet. 520 ; *Wilcox v. Jackson,* 13 Pet. 498. In the case last cited the law is thus stated : "It has been said that the State of Illinois has a right, by law, that a title derived from the United States, which by their laws is only inchoate and imperfect, shall be deemed as perfect a title as if a patent had issued from the United States ; and the construction of her own courts seems to give that effect to her statute. That State has an undoubted right to legislate as she may please in regard to the remedies to be prosecuted in her courts, and to regulate the disposition of the property of her citizens by descent, devise, or alienation. But the property in question was a part of the public domain of the United States ; Congress is invested by the constitution with the power of disposing of, and making needful rules and regulations respecting it. Congress has declared, as we have said, by its legislation, that, in such a case as this, a patent is necessary to complete the title. But, in this case, no patent has issued ; and, therefore, by the laws of the United States,

the legal title has not passed, but remains in the United States. Now, if it were competent for a State legislature to say, that, notwithstanding this, the title shall be deemed to have passed, the effect of this would be, not that Congress had the power of disposing of the public lands, and prescribing the rules and regulations concerning that disposition, but that Illinois possessed it. That would be to make the laws of Illinois paramount to those of Congress, in relation to a subject confided by the constitution to Congress only. And the practical result in this very case would be, by force of State legislation, to take from the United States their own land, against their own will, and against their own laws. We hold the true principle to be this, that, whenever the question in any court, State or Federal, is, whether a title to land, which had once been the property of the United States, has passed, that question must be resolved by the laws of the United States; but that, whenever, according to those laws, the title shall have passed, then that property, like all other property in the State, is subject to State legislation, so far as that legislation is consistent with the admission, that the title passed and vested according to the laws of the United States.''

Under the laws of Congress, enacted in execution of the power conferred by the constitution, receiving and receipting for the purchase money of public land entered by an individual, or issuing upon entry of and payment for land a certificate of entry to the purchaser, does not pass to such purchaser or entryman the title of the United States; but to that end the execution of a patent by the government is essential.—*Bagnell v. Broderick*, 13 Pet. 456; *Wilcox v. Jackson*, 13 Pet. 498, *supra*.

The application of these doctrines in the present case supports the conclusion reached by the chancellor, *i. e.*, that as between the United States and Horne the certificate of entry issued to the latter in 1821 did not convey to him the title of the former in and to the land in controversy; and it is shown in the case that said certificate was voluntarily surrendered by Horne, cancelled by the land office authorities at his instance and request, and that the money he had paid was refunded to him.

Whether, notwithstanding the destruction of all predicate for a patent and of all rights Horne might otherwise have had to have a patent issued to him, by the

surrender and cancellation of the certificate, title passed into Horne by patent which was subsequently inadvertently issued by the government, depends upon the further inquiry whether Horne accepted the patent so issued. There is no pretense that the paper ever passed into Horne's possession or out of the hands of the land office officials. But delivery to the patentee is not essential. A patent properly signed, and recorded in books of the Land Department, and thus ready for delivery to the person named as patentee, is as efficacious to pass the title into him as if there had been a technical delivery, provided the patent has been accepted by him. And ordinarily acceptance will be presumed from the beneficial nature of the grant. But the presumption is not a conclusive one. It may in all cases be rebutted and overturned by proof that, although it was to tho interest of the person named as patentee to accept the grant, yet, he did not in fact assent to or accept it. The presumption is, in our opinion, entirely emasculated in the present case. It is clearly shown here that Horne did not accept or assent to this patent.

It is made to appear that, after Horne had entered the land in controversy and the certificate had issued to him, he found that he had made a mistake in respect of the land he desired and intended to purchase and thought he was entering. Upon this discovery, he made affidavit setting forth his mistake and asking the cancellation of of the entry and the refunding of his money. Other evidence was taken, it seems, as to the mistake, the matter was fully investigated, and finally the entry was set aside, the certificate was surrendered and cancelled, and the purchase money was refunded to Horne. All this was before the patent was made out and signed, but notwithstanding these facts, the patent was inadvertently signed and sent to the local land office. Before any act or word of assent or acceptance on the part of Horne was done or uttered, the mistake in making out and signing the patent was discovered, and thereupon it was recalled and cancelled. It does not appear, indeed, that Horne ever accepted the patent. On this state of case the presumption of assent or acceptance is overturned. There was no acceptance of the patent. There was no conveyance of the United States to Horne. The patent was mere waste paper, and properly cancelled as

[Chalifoux & Co. v. Potter.]

such. And the title continued throughout in the United States until divested by the patent long subsequently issued and delivered to I. C. Brown.—*McGuire v. Tyler*, 8 Wall. 650; *United States v. Schurz*, 102 U. S. 378, 399–400.

It follows from the foregoing principles that the decree of the chancery court must be affirmed.

Affirmed.